UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

PRESTON E. FORTHUN,
ABDINASIR M. ABIKAR,
ALI M. ABIKAR,
DANA S. COMEAUX,
ABDISALAN A. HUSSEIN,
CARLOS P. LUNA, and
SAHAL A. WARSAME,

Defendants.

CR 16-339 WMW/KMM

**INDICTMENT**

18 U.S.C. § 1349

THE UNITED STATES GRAND JURY CHARGES:

## INTRODUCTION

1. From at least in or about 2010 through in or about December 2015, Defendant **PRESTON E. FORTHUN**, a Doctor of Chiropractic, participated in a scheme with others to defraud automobile insurance companies by submitting claims and receiving reimbursements through his chiropractic clinic for chiropractic services that either were not medically necessary or were not rendered. The services prescribed and purportedly provided by **FORTHUN** were not determined by medical necessity or the physical condition of each patient and were, instead, designed to fraudulently maximize reimbursement from the patients' automobile insurance companies. To induce patients to show up to chiropractic appointments for medically unnecessary services, **FORTHUN** made illegal payments to patient recruiters, known as "runners," typically paying each

SCANNED
DEC 20 2016
U.S. DISTRICT COURT MPLS

runner $1,000 to $1,500 per automobile accident patient, to bring those patients to his clinics for services, often withholding those payments until the patients had attended a minimum threshold number of treatment sessions. The runners, in turn, induced patients into attending these unnecessary treatment sessions by paying illegal kickbacks to the patients. **FORTHUN** then billed automobile insurance companies for these fraudulent claims.

## GENERAL ALLEGATIONS

At all times relevant to this indictment:

### Relevant Entities and Individuals

2. Comprehensive Rehab – West and Comprehensive Rehab – East were two chiropractic clinics in Minneapolis, Minnesota (collectively, "Comprehensive Rehab").

3. Defendant **PRESTON E. FORTHUN**, a resident of Bloomington, Minnesota, was a Doctor of Chiropractic, registered with State of Minnesota, was employed at Comprehensive Rehab, and was a fifty percent owner of Comprehensive Rehab Centers of MN, which operated the Comprehensive Rehab clinics.

4. Unindicted Co-Conspirator #1 was a Doctor of Chiropractic, registered with the State of Minnesota, was employed at Comprehensive Rehab, and was the other fifty percent owner of Comprehensive Rehab Centers of MN.

5. **FORTHUN** and Unindicted Co-Conspirator #1 submitted and caused to be submitted to automobile insurance companies claims for chiropractic and rehabilitation services that were not medically necessary and were not provided and made and caused to be made illegal payments for the referral of patients to Comprehensive Rehab.

6. Defendant **ABDINASIR M. ABIKAR**, a resident of Minneapolis, Minnesota, was a runner employed by **PRESTON E. FORTHUN**, Unindicted Co-Conspirator #1, and Comprehensive Rehab. **ABDINASIR ABIKAR** recruited automobile accident victims to show up for appointments at Comprehensive Rehab, received illegal payments for recruiting these patients, and made illegal payments to patients to induce them to continue receiving medically unnecessary chiropractic services.

7. Defendant **ALI M. ABIKAR**, a resident of Edina, Minnesota, was a runner employed by **PRESTON E. FORTHUN**, Unindicted Co-Conspirator #1, and Comprehensive Rehab. **ALI ABIKAR** recruited automobile accident victims to show up for appointments at Comprehensive Rehab, received illegal payments for recruiting these patients, and made illegal payments to patients to induce them to continue receiving medically unnecessary chiropractic services.

8. Defendant **DANA S. COMEAUX**, a resident of Brooklyn Center, Minnesota, was a runner employed by **PRESTON E. FORTHUN**, Unindicted Co-Conspirator #1, and Comprehensive Rehab. **COMEAUX** recruited automobile accident victims to show up for appointments at Comprehensive Rehab, received illegal payments for recruiting these patients, and made illegal payments to patients to induce them to continue receiving medically unnecessary chiropractic services.

9. Defendant **ABDISALAN A. HUSSEIN**, a resident of Minneapolis, Minnesota, was a runner employed by **PRESTON E. FORTHUN**, Unindicted Co-Conspirator #1, and Comprehensive Rehab. **HUSSEIN** recruited automobile accident victims to show up for appointments at Comprehensive Rehab, received illegal payments

for recruiting these patients, and made illegal payments to patients to induce them to continue receiving medically unnecessary chiropractic services

10. Defendant **CARLOS P. LUNA**, a resident of Minneapolis, Minnesota, was a runner employed by **PRESTON E. FORTHUN**, Unindicted Co-Conspirator #1, and Comprehensive Rehab. **LUNA** recruited automobile accident victims to show up for appointments at Comprehensive Rehab, received illegal payments for recruiting these patients, and made illegal payments to patients to induce them to continue receiving medically unnecessary chiropractic services.

11. Defendant **SAHAL A. WARSAME**, a resident of Minneapolis, Minnesota, was a runner employed by **PRESTON E. FORTHUN**, Unindicted Co-Conspirator #1, and Comprehensive Rehab. **WARSAME** recruited automobile accident victims to show up for appointments at Comprehensive Rehab, received illegal payments for recruiting these patients, and made illegal payments to patients to induce them to continue receiving medically unnecessary chiropractic services.

**Minnesota's "No-Fault" Automobile Insurance**

12. The Minnesota No-Fault Automobile Insurance Act (the "No-Fault Act"), mandated that every vehicle registered in the State of Minnesota be covered by "no-fault" automobile insurance. The No-Fault Act also required that automobile insurance carriers (each being an "Insurer," or collectively the "Insurers") issue policies that comply with various requirements, ıcluding providing minimum coverage of $20,000 in medical expense benefits and $20,000 in income loss, replacement services loss, funeral expense loss, survivor's economic loss, and survivor's replacement services loss benefits, to victims

of automobile accidents. The No-Fault Act required that Insurers provide this coverage and pay these benefits regardless of which party is at fault for the automobile accident. Among the medical expense benefits that an Insurer was required to reimburse were chiropractic services.

13. Insurers providing coverage under the No-Fault Act constituted a "health care benefit program," as defined by Title 18 United States Code, Section 24(b).

14. The No-Fault Act prohibited health care providers, including chiropractors, from initiating direct contact with any individual who suffered an injury as a result of an automobile accident, specifying that the prohibited direct contact included contact by any employee, agent, or third party acting on behalf of the health care provider, including individuals referred to as "cappers," "runners," or "steerers." Minnesota laws also expressly prohibited the employment of runners, cappers, or steerers (hereinafter, "runner" or "runners"), defining each such term to mean "a person who for a pecuniary gain directly procures or solicits prospective patients through telephonic, electronic, or written communication, or in-person contact, at the direction of, or in cooperation with, a health care provider when the person knows or has reason to know that the provider's purpose is to perform or obtain services or benefits under or relating to a contact of motor vehicle insurance." Mn. Stat. § 609.612 Subd. 1(c). Any claims for services rendered by a health care provider that resulted from the use of a runner "are noncompensable and unenforceable as a matter of law." *Id.* Subd. 2.

## The No-Fault Insurance Fraud Scheme

15. In order to take advantage of the provisions of the No-Fault Act that required reimbursement of chiropractic services, **PRESTON E. FORTHUN** focused Comprehensive Rehab's business on automobile accident victims and structured it in a way that would maximize both the number of automobile accident patients seen at the clinic and the number of visits and treatments each patient would receive.

16. To increase the patient volume at Comprehensive Rehab, in violation of Minnesota State Law, **PRESTON E. FORTHUN** and Unindicted Co-Conspirator #1 paid and caused to be paid illegal kickbacks to runners, including to **ABDINASIR M. ABIKAR, ALI M. ABIKAR, DANA S. COMEAUX, ABDISALAN A. HUSSEIN, CARLOS P. LUNA,** and **SAHAL A. WARSAME**, in exchange for the referral of automobile accident victims to Comprehensive Rehab. **PRESTON E. FORTHUN** and Unindicted Co-Conspirator #1 generally paid the runners, including **ABDINASIR M. ABIKAR, ALI M. ABIKAR, DANA S. COMEAUX, ABDISALAN A. HUSSEIN, CARLOS P. LUNA,** and **SAHAL A. WARSAME**, a kickback of between $1,000 and $1,500 per patient referral.

17. To ensure that he and Comprehensive Rehab would maximize profits when billing the services to the Insurers, **PRESTON E. FORTHUN** and Unindicted Co-Conspirator #1 withheld kickback payments until after the referred patient had completed a minimum threshold number of chiropractic appointments at Comprehensive Rehab, thus ensuring that **ABDINASIR M. ABIKAR, ALI M. ABIKAR, DANA S. COMEAUX, ABDISALAN A. HUSSEIN, CARLOS P. LUNA, SAHAL A. WARSAME** and other

runners would require the automobile accident patients that they referred to return for multiple visits.

18. To induce patients to go to Comprehensive Rehab for services and to continue attending medically unnecessary sessions at Comprehensive Rehab, **ABDINASIR M. ABIKAR, ALI M. ABIKAR, DANA S. COMEAUX, ABDISALAN A. HUSSEIN, CARLOS P. LUNA, SAHAL A. WARSAME** and other runners paid cash kickbacks directly to the patients. In other instances, patients not affiliated with any of the runners requested kickbacks, and **PRESTON E. FORTHUN** and Unindicted Co-Conspirator #1 paid cash kickbacks directly to these patients.

19. To conceal the true nature of the illegal payments, **PRESTON E. FORTHUN** and Unindicted Co-Conspirator #1 wrote checks to the runners and falsely described those checks on the memo lines as payments for services such as "transportation" or "marketing." **FORTHUN** and Unindicted Co-Conspirator #1 also concealed the illegal kickbacks by making many of these payments in cash, by taking out substantial cash withdrawals or writing large checks to "Cash" from various bank accounts traceable to Comprehensive Rehab. During the period from 2012 through 2015, **FORTHUN** and Unindicted Co-Conspirator #1 withdrew over $448,000 in cash from accounts traceable to Comprehensive Rehab.

20. Regardless of the physical condition of each patient, **PRESTON E. FORTHUN** prescribed a similar, and often identical, protocol of treatment for each patient, seeking to maximize the number of visits that each patient would make to Comprehensive Rehab, to exhaust the available No-Fault benefits for each patient, and to maximize

reimbursement for **FORTHUN** and Comprehensive Rehab. **FORTHUN** prescribed and performed these services for automobile accident patients without consideration of the medical necessity of these treatments.

21. **PRESTON E. FORTHUN** then submitted and caused to be submitted to the Insurers claims for these services that were not medically necessary and, in other instances, were not provided. With each such claim submission to the various Insurers, **FORTHUN** and Comprehensive Rehab represented that the services for which reimbursement was being sought were provided and were medically necessary.

22. **PRESTON E. FORTHUN** also submitted and caused to be submitted to the Insurers claims for services that were provided as a result of kickback payments to **ABDINASIR M. ABIKAR, ALI M. ABIKAR, DANA S. COMEAUX, ABDISALAN A. HUSSEIN, CARLOS P. LUNA, SAHAL A. WARSAME** and other runners and failed to disclose this material fact to the Insurers.

23. The Insurers paid millions of dollars to **PRESTON E. FORTHUN** and Comprehensive Rehab as a result of these false and fraudulent claims submissions.

**COUNT 1**
(Conspiracy to Commit Health Care Fraud)

24. The allegations set forth in paragraphs 1 through 23 of this Indictment are re-alleged as if fully set forth herein.

25. From at least in or about 2010 and continuing through in or about December 2015, in the State and District of Minnesota and elsewhere, the defendants,

**PRESTON E. FORTHUN,**
**ABDINASIR M. ABIKAR,**
**ALI M. ABIKAR,**
**DANA S. COMEAUX,**
**ABDISALAN A. HUSSEIN,**
**CARLOS P. LUNA, and**
**SAHAL A. WARSAME,**

did knowingly and willfully conspire, combine, and agree with each other and with other persons known and unknown to the Grand Jury to execute and attempt to execute a scheme and artifice to defraud a health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Sections 1349.

**COUNT 2**
(Conspiracy to Commit Mail Fraud)

26. The allegations set forth in paragraphs 1 through 23 of this Indictment are re-alleged as if fully set forth herein.

27. From at least in or about 2010 and continuing through in or about December 2015, in the State and District of Minnesota and elsewhere, the defendants,

**PRESTON E. FORTHUN,**
**ABDINASIR M. ABIKAR,**
**ALI M. ABIKAR,**

**DANA S. COMEAUX,
ABDISALAN A. HUSSEIN,
CARLOS P. LUNA, and
SAHAL A. WARSAME,**

did knowingly and willfully conspire, combine, and agree with each other and with other persons known and unknown to the Grand Jury to commit mail fraud, in violation of Title 18, United States Code, Section 1341.

All in violation of Title 18, United States Code, Section 1349.

**FORFEITURE ALLEGATIONS**

28. Counts 1 and 2 of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), and Title 28, United States Code, Section 2461(c).

29. Upon conviction of the offenses alleged in Counts 1-2 of this Indictment, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(7) and Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses charged in Counts 1 and 2, respectively.

30. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

UNITED STATES ATTORNEY

FOREPERSON