UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                          Criminal No. 16-339 (MJD/FLN)

          Plaintiff,

    v.

Preston Forthun (1),                               **REPORT AND**
Dana Comeaux (4),                                  **RECOMMENDATION**
Abdisalan Hussein (5),
Carlos Luna (6),
Sahal Warsame (7),

          Defendants.

_____

David Michael Maria and John Kokkinen, Assistant United States Attorneys, for Plaintiff.
Andrew Birrell and Ian Birrell for Defendant Preston Forthun.
Keala Ede for Defendant Dana Comeaux.
R.J. Zayed and Lauren Roso for Defendant Abdisalan Hussein.
Charles Hawkins for Defendant Carlos Luna.
Terrence Duggins for Defendant Sahal Warsame.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on April 28, 2017, on Dana Comeaux's motion to suppress statements (ECF Nos. 149); Preston Forthun's and Carlos Luna's respective motions to suppress search and seizure (ECF Nos. 152, 183); as well as Defendants Preston Forthun, Dana Comeaux, Abdisalan Hussein, Carlos Luna, and Sahal Warsame's motions to dismiss the indictment (ECF Nos. 146, 181, 195). This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. At the hearing, the Government entered two exhibits into evidence and offered testimony from Minnesota Department of Commerce Fraud Bureau Special Agent Steve Kritzeck. *See* Exhibit and Witness List, ECF No. 208. For the reasons set forth below, Defendants' motions should be **DENIED**.

**A.      The Indictment**

On December 20, 2016, a United States Grand Jury returned an indictment, charging Defendant Preston Forthun with making illegal kick-back payments to Defendants Abdinasir Mayow Abikar, Ali Mayow Abikar, Dana Comeaux, Abdisalan Hussein, Carlos Luna, and Sahal Warsame, in a scheme to defraud automobile insurance companies by submitting claims and receiving reimbursements through his chiropractic clinics for chiropractic services that either were not medically necessary or were not rendered. Indictment, ECF No. 1. Defendants are charged with one count of conspiracy to commit health care fraud and one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349. *Id.* at 24–27; *see also* 18 U.S.C. §§ 1341, 1347. The Indictment alleges that Forthun, who is a chiropractor and fifty percent owner of Comprehensive Rehab Centers of Minnesota, paid Abikar, Abikar, Comeaux, Hussein, Luna, and Warsame, to recruit automobile accident victims to show up for medical appointments and continue receiving unnecessary chiropractic services from the Comprehensive Rehab Center clinics. *Id.* ¶¶ 3–11. Abikar, Abikar, Comeaux, Hussein, Luna, and Warsame, are also alleged to have paid some of these recruited patients directly to continue going to the clinics for chiropractic treatments. *Id.* Under this scheme, Defendants are accused of causing automobile insurance companies to have paid out millions of dollars as a result of false and fraudulent reimbursement claims. *Id.* ¶¶ 21–23. Defendants Abdinasir Mayow Abikar and Ali Mayow Abikar entered into plea agreements with the Government on March 15, 2017, and March 9, 2017, respectively. Plea Agreements, ECF Nos. 123, 132. Trial is scheduled to begin for the remaining Defendants on September 27, 2017, before the Honorable Judge Michael J. Davis. Order, ECF No. 217.

**B.      Motion to Suppress Statements (ECF Nos. 149)**

Dana Comeaux moves to dismiss statements he made on December 6, 2016, and December 8, 2016. Mot. to Suppress, ECF No. 149. At the hearing, Special Agent Kritzeck testified that he spoke with Comeaux on December 6, 2016, over the phone and requested that Comeaux come in for an interview. Comeaux met with Kritzeck at FBI Brooklyn Center headquarters on December 8, 2016. Before speaking with Kritzeck on December 8, 2016, Comeaux requested that Kritzeck sign a document promising not to prosecute him. Kritzeck told Comeaux that he would not sign such a document before hearing what Comeaux had to say. Comeaux contends that this implied a promise that once interviewed, an agreement not to prosecute may be reached. *See* Def.'s Second Mem. in Supp. of Mot. to Suppress 3, ECF No. 212. Comeaux was told that his wife could not join them in the interview room. Comeaux then met with Kritzeck, FBI Special Agent Chris Lester, and Assistant United States Attorney David Maria, where he was questioned in a small room for twenty or thirty minutes. There is no dispute that Comeaux was not advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), either over the phone on December 6, 2016, or at any point on December 8, 2016. Defendant also argues that his statement on December 8, 2016, was involuntary as his will was overborne by threats and promises. *See United States v. Gannon*, 531 F.3d 657, 661 (8th Cir. 2008).

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. In *Miranda v. Arizona*, the Supreme Court concluded that four specific warnings were necessary prior to a custodial interrogation in order to "assure that the individual's right to choose between silence and speech remain unfettered throughout the interrogation process." 384 U.S. at 469. "The basic rule of *Miranda* is that an individual must be advised of the right to be free from compulsory self-incrimination, and the right

3

to the assistance of an attorney, any time a person is taken into custody for questioning." *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990) (internal citations omitted). Law enforcement officers must inform suspects of their *Miranda* rights before subjecting them to custodial interrogations. *See United States v. Sanchez*, 676 F.3d 627, 630 (8th Cir. 2012). "Failure to do so results in a violation of the suspect's Fifth Amendment rights and renders any statement gained from the violation inadmissible in the government's case-in-chief." *Id.*; *see also Stansbury v. California*, 511 U.S. 318, 322 (1994) (holding that statements elicited from a suspect in violation of *Miranda* are inadmissible).

A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." *United States v. Flores-Sandoval*, 474 F.3d 1142, 1147 (8th Cir. 2007). "The ultimate inquiry to determine custody for *Miranda* purposes is whether there was a formal arrest, or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* Custody depends on the totality of the circumstances, and the Eighth Circuit considers six factors when determining whether a person was in custody for purposes of the Fifth Amendment:

(1)  whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest;

(2)  whether the suspect possessed unrestrained freedom of movement during questioning;

(3)  whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;

(4)  whether strong arm tactics or deceptive stratagems were employed during questioning;

(5)  whether the atmosphere of the questioning was police-dominated; or

>  (6) whether the suspect was placed under arrest at the termination of the questioning.

*Griffin*, 922 F.2d at 1349. "The ultimate test is whether a reasonable person in that position would have felt free to end the interview." *United States v. Aldridge*, 664 F.3d 705, 711 (8th Cir. 2011). Absent custodial interrogation, there is no legal requirement that a suspect be given *Miranda* warnings. *See Sanchez,* 676 F.3d at 630.

On December 6, 2016, Comeaux was free to hang up the phone on Kritzeck at any time. Because there was absolutely no restraint on Comeaux's freedom of movement, let alone to a degree that might be associated with a formal arrest, the Court concludes that any statement made on December 6, 2016, was made in the absence of custodial interrogation. *See Flores-Sandoval*, 474 F.3d at 1147. Therefore, there was no legal requirement for Kritzeck to afford Comeaux a recitation of his rights, pursuant to *Miranda*. *Miranda*, 384 U.S. at 469. To the extent that Comeaux seeks to suppress statements he made during his telephone conversation with Kritzeck, the motion must be denied.[1]

On December 8, 2016, Comeaux was also not subject to a custodial interrogation for which Kritzeck was required to afford him his *Miranda* warnings. *Miranda*, 384 U.S. at 469. Applying the first and sixth *Griffin* factors, Comeaux concedes that he understood from Kritzeck that he would not be arrested at the conclusion of questioning and was, in fact, not arrested at the conclusion of the questioning. ECF No. 212 at 10; *Griffin*, 922 F.2d at 1349. As to the second factor, Comeaux's

---

[1] When given an opportunity to further brief the issue following the evidentiary hearing, with respect to the telephonic statements made on December 6, 2016, counsel for Comeaux stated only that Defendant, "submits the matter on the record already before the Court." ECF No. 212 at 1 n.1.

movement was never restrained. *Griffin*, 922 F.2d at 1349. Comeaux voluntarily came to speak with Kritzeck at an appointed time that he set, and was free to end the conversation at any point. Indeed, he advised Kritzeck that he had spoken with a lawyer beforehand and was made aware of his rights and the risks he took by speaking with the officers. Under the third *Griffin* factor, Comeaux voluntarily arrived to a scheduled appointment and therefore, acquiesced to official requests to respond to questions. *Id.* While it is clear that Comeaux was in a police dominated environment, (fifth *Griffin* factor), assuming, without deciding, that the fourth *Griffin* factor (strong arm tactics or deceptive stratagems) was in Comeaux's favor, the Court nonetheless concludes that under the totality of the circumstances, Comeaux was not in custody for purposes of *Miranda*. *See Griffin*, 922 F.2d at 1349.

The facts here are remarkably similar to the facts in *United States v. Boslau*. 632 F. 3d 422 (2011). Kevin Boslau responded to an FBI request for an interview by going to the FBI office where he was interviewed for 43 minutes during which he was threatened with prosecution and implicitly promised more lenient treatment than potential co-defendants if he was "the first person who gets on board." *Id.* at 425. The Eighth Circuit held that the statement Boslau made inside the FBI office was both voluntary and non-custodial. *See id.* at 428–29. The only significant difference between the facts here and in *Boslau*, is that Boslau's companion was permitted to remain with him in the room during the alleged interrogation. *See id.* at 424. Here, the agents expressly denied Comeaux's request that his wife accompany him into the interrogation room. Although the *Boslau* Court expressly mentions the presence of his companion in both the analyses of whether Boslau was in custody and whether his statements were voluntary, this Court fails to see how that distinction would dictate a different result on the facts found here.

Comeaux's motion to suppress statements must be denied.

C.      **Motions to Suppress Search and Seizure (ECF Nos. 152, 183)**

On December 14, 2015, the Honorable Magistrate Judge Becky Thorson signed a search warrant authorizing the search of Comprehensive Rehab Center-West and Comprehensive Rehab Center-East. Gov't Exs. 1–2, ECF No. 208. Forthun and Luna[2] both independently move to suppress any evidence obtained during searches pursuant to these warrants, contending that because the affidavits in support of the warrants rely on Minnesota Statute section 609.12[3] ("the Runner Statute") and because the affiant failed to include reference to the August 19, 2014, *Illinois Farmers Insurance Co. v. Mobile Diagnostic Imaging* Order, *see* No. 13-cv-2820 PJS/TNL, 2014 WL 4104789, at *1 (D. Minn. Aug. 19, 2014), Magistrate Thorson did not know to disregard the allegations related to the Runner Statute in the affidavit. *See* Mots. To Suppress, ECF Nos. 152, 183. If she had, Defendants contend, Judge Thorson would have determined that the affidavit does not support a finding of probable cause. *See id.* The Government argues first that the search warrant affidavits do not solely rely on violations of the Runner Statute, and second that "*Illinois Farmers* [does not] foreclose[ ] a federal prosecution for mail, wire, or health care fraud based on evidence

---

[2]

> Luna also moves for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Because Luna does not identify "a false statement knowingly and intentionally, or with reckless disregard for the truth was included in the affidavit," *United States v. Humphreys*, 982 F.2d 254, 259 n.2 (8th Cir. 1992), he has not met his burden to be entitled to such a hearing.

[3]

> "Whoever employs, uses, or acts as a runner, capper, or steerer is guilty of a felony and may be sentenced to imprisonment for not more than three years or to a payment of a fine of not more than $6,000, or both. Charges for any services rendered by a health care provider, who violated this section in regard to the person for whom such services were rendered, are noncompensable and unenforceable as a matter of law."

> Minn. Stat. § 609.612, subdiv. 2.

that chiropractors made kickback payments to runners and then omitted, failed to disclose, or concealed that practice." Gov't Opp'n Mem. 39–40, ECF No. 201.

After reviewing the Order, the Court first observes that *Illinois Farmers* does not foreclose a federal prosecution under the facts alleged in the Indictment, nor does it prohibit a probable cause finding that evidence of a crime may be found based on the affidavits at issue in this case. *See* 2014 WL 4104789. Here, FBI Special Agent Jennifer Khan authored nearly identical affidavits in support of the search warrants to search Comprehensive Rehab Center-West and Comprehensive Rehab Center-East. ECF No. 208, Gov't Exs. 1–2. The affidavits include approximately fifteen pages outlining the ongoing joint investigation of the FBI and the Minnesota Department of Commerce Fraud Bureau into the suspected scheme and fraud. *Id.* Based on evidence collected from the experiences of undercover employees identified in the affidavit, Khan attested that she believed evidence of a fraud could be found in Comprehensive Rehab Center-West and Comprehensive Rehab Center-East. *Id.*

Assuming without deciding that the search warrants lacked probable cause, the Court concludes that the evidence is nonetheless admissible under the good-faith exception to the exclusionary rule as articulated in *United States v. Leon*, 468 U.S. 897, 922 (1984). *See also United States v. Clay*, 646 F.3d 1124 (8th Cir. 2011) ("[T]he exclusionary rule should not be applied so as to bar the admission of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, even if that search warrant is later held to be invalid." (citing *Leon*, 468 U.S. at 900)).

The Eighth Circuit has outlined four situations where an officer's reliance on a warrant would be unreasonable: (1) the officer included information in the affidavit that he knew was false or would have known was false except for his reckless disregard of the truth; (2) the affidavit is so

8

lacking in probable cause that it is objectively unreasonable for the officer to rely on it; (3) the judge failed to act in a neutral and detached manner; or (4) the warrant is so facially deficient that the officer cannot reasonably presume the warrant to be valid. *See United States v. Phillips*, 88 F.3d 582, 586 (8th Cir. 1996) (citing *Leon*, 468 U.S. at 922). None of these situations are applicable here. This is not a situation where the supporting affidavits were so devoid of factual support that it would be objectively unreasonable for a law enforcement officer to rely on it. *Cf. United States v. Herron*, 215 F.3d 812 (8th Cir. 2000) (concluding that the good-faith exception did not apply where the affidavit at issue contained no facts that the defendant was involved in marijuana activities or that such activities were occurring on the premises searched). The record does not support a finding that the officers' reliance on the warrants were unreasonable. *See Leon*, 468 U.S. at 922. Additionally, there is no evidence that Khan included false information in the warrant application, that Judge Thorson failed to act in a neutral manner, or that the warrants were so facially deficient it would be unreasonable for an officer to rely on them. Indeed, Defendants do not argue that there are factual deficiencies in the affidavits, but only contend that Khan failed to include what they believe to be applicable law. Therefore, the motions to suppress evidence obtained pursuant to the search warrants authorizing the search of Comprehensive Rehab Center-West and Comprehensive Rehab Center-East, must be denied. *See Leon*, 468 U.S. at 922.

**D.     Motions to Dismiss the Indictment (ECF Nos. 146, 181, 195)**[4]

In the motions to dismiss, Defendants first assert that the Indictment fails to allege an offense against the United States to properly invoke the jurisdiction of this Court, but only includes

---

[4] Luna and Comeaux's motions for joinder (ECF Nos. 192, 193, 198) are addressed in the Court's Order.

violations of the Minnesota Runner Statute. *See generally* Defs.' Mems. in Supp. of Mot. to Dismiss, ECF Nos. 147, 182, 196; Minn. Stat. § 609.612. Second, Defendants argue that "there is absolutely no factual specificity surrounding the [I]ndictment's allegations of medically unnecessary care or billing for work that was not done." ECF No. 147, 182 at 2. Third, Defendants contend that the Indictment is both multiplicitous and duplicitous and fails to provide them with the Constitutionally required notice of the crimes charged. The Court address each argument in turn.

### 1. The Indictment Alleges Conspiracy to Commit Health Care and Mail Fraud

Defendants acknowledge that the federal crimes with which they are charged, namely conspiracy to commit health care and mail fraud in violation of 18 U.S.C. § 1349, requires that "[t]he conspirators must knowingly and willfully execute a scheme to defraud an healthcare benefit program." ECF Nos. 147, 182 at 8–9 (internal citations omitted). However, Defendants contend that the Indictment is insufficient and should be dismissed because to allege a conspiracy to commit fraud under the statute, "the use of a runner need[s] to be coupled with either medically unnecessary treatment or treatment billed for that never occurred." ECF Nos. 147, 182 at 14. "[T]he claim [that] Dr. Forthun could not bill for patients associated with the use of runners does not save the prosecution against him or the other [D]efendants [because he] . . . must be charged with and convicted of violating [the Runner Statute] before a contract for reimbursement would be unenforceable by a provider." *Id.* The Government argues that, "the [I]ndictment details how the scheme was set up so that patients would attend medically unnecessary treatments at Forthun's clinic. . . . [T]he runners paid patients directly to attend—and to continue attending—treatment sessions at the clinic." ECF No. 201 at 14 (citing ECF No. 1 ¶ 18). Additionally, Forthun is alleged to have "withh[e]ld the kickback payment to the runner until after the patient in question had completed a certain number of visits . . . [and the patient would] not receive payment from the

runner until after the patient had attended this threshold number of visits." ECF No. 201 at 14 (citing ECF No. 1 ¶¶ 17, 18). "Forthun then submitted claims for these services to the automobile insurance companies . . . [without] disclos[ing] the fact that the claims were the product of runner payments, which, as the indictment alleges, is a material fact to the insurance companies." ECF No. 201 at 15 (citing ECF No. 1 ¶ 22).

"The true test of the sufficiency of an indictment is . . . whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet." *United States v. Debrow*, 346 U.S. 374, 376 (1953) (internal citations omitted). The Court concludes that the Indictment adequately alleges that Defendants conspired to obtain money wrongfully from a healthcare program, in that they are accused of knowingly and willfully either receiving money to bring in patients, paying patients, or paying others to bring in patients, for healthcare treatment billed to automobile insurance providers. Defendants have not pointed to any authority to support the proposition that a conviction under the Runner Statute is necessary to allege the conspiracy, but to the extent that they believe it is, this is a trial defense. The Court again observes that *Illinois Farmers* does not foreclose a federal prosecution under the facts alleged in the Indictment, *See* 2014 WL 4104789, and concludes that any information related to Minnesota Statute section 609.612, is relevant to the intent of the parties and the counts charged and not so inflammatory as to be prejudicial. *See* Fed. R. Crim. P. 7(c). Any prejudice suffered by the allegations in the Indictment are outweighed by their relevancy to the charges. *See Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962).

### 2. The Indictment is Not Vague

Defendants next argue that the Indictment fails to give them notice of the crime charged as it "does not identify which patients it refers to. It does not allege specific care Dr. Forthun provided

11

that was medically unnecessary. It does not allege kickbacks were contingent upon medically unnecessary care." ECF Nos. 147, 182 at 15. The Government, however, asserts that the Indictment provides detailed allegations regarding the conspiracy and the scheme to defraud. ECF No. 201 at 22.

Defendants are not charged with committing health care fraud or with committing mail fraud, but with engaging in a conspiracy to defraud an healthcare benefit program and with contemplating use of the mail. *See* ECF No. 1. The Court concludes that the Indictment adequately alleges that Defendants knowingly and willfully participated and executed a scheme to defraud an healthcare benefit program. 18 U.S.C. § 1349. As stated above, the Indictment accuses Defendants of either paying patients directly or through other co-Defendants to attend a certain number of treatment sessions at Forthun's clinic. *See* ECF No. 1 ¶ 18. Forthun is then accused of submitting claims for these services to the automobile insurance companies. *See id.* ¶ 22. Defendants are provided with enough information to mount a defense to the crime charged. *See* Fed. R. Crim. P. 7(c)(1).

### 3. The Indictment is Not Multiplicitous nor Duplicitous

Defendants finally argue that the Indictment must be dismissed because Count 1 is multiplicious in charging a conspiracy with the object of both mail and health care fraud, and Count 2 is duplicitous in that it charges a conspiracy to commit mail fraud and actual mail fraud in a single count. ECF Nos. 147, 182 at 18–19. The Government argues that "contrary to [D]efendants' assertion, the [I]ndictment does not charge the substantive offense of health care fraud or the substantive offense of mail fraud . . . [or] a violation of the runner statute." ECF No. 201 at 23.

"Multiplicity is the charging of a single offense in several counts. . . . The obvious ill to be avoided is that a multiplicity of charges heaps repeated punishments on the defendant and makes it appear that he has engaged in a crime spree, rather than a single violation of the law." *United States*

*v. Edwards*, 976 F. Supp. 810, 811 (E.D. Ark. 1997) (internal citations omitted). Count 1 only charges Defendants with conspiracy to commit health care fraud. The Government will be required to prove that Defendants knowingly and willfully executed a scheme to defraud an healthcare benefit program, as 'health care benefit program' is defined in 18 U.S.C. § 24(b). ECF No. 201 at 24. Because Count 1 singularly charges Defendants with conspiracy to commit health care fraud, the Court concludes that Count 1 is not multiplicitous. *See Edwards*, 976 F. Supp. at 811.

Duplicity is the joining in a single count, two or more distinct and separate offenses. *United States v. Street*, 66 F.3d 969, 974 (8th Cir. 1995). "The principal vice of a duplicitous indictment is that they jury may convict a defendant without unanimous agreement on the defendant's guilt with respect to a particular offense." *United States v. Karam*, 37 F.3d 1280, 1286 (8th Cir. 1994). A charge constitutes a separate offense if the Government is required to provide different factual proof. *See United States v. Graham*, 60 F.3d 463, 467 (8th Cir. 1995). The Court agrees with the Government that Count 2 "charges only conspiracy to commit mail fraud. It does not charge substantive mail fraud, as evidenced by the fact that it has not set forth any specific mailings that would form the basis for substantive mail fraud counts." ECF No. 201 at 25. The Government will only have the burden of providing factual proof of a conspiracy to defraud, which contemplated use of the mail. *Id.*; 18 U.S.C. § 1349. The Court concludes that Count 2 is not duplicitous.

### 4. Delivery of Medical Services or Billing the Insurers

The Government also responds to additional arguments it believes are made by Warsame and Hussein. The Court concludes that dismissal of the Indictment is not warranted on these grounds. First, the Court observes that Defendants are charged with a conspiracy to commit health care and mail fraud. ECF No. 1. It is irrelevant, which member of the conspiracy charged actually delivered medical services or billed insurers so long as the Indictment adequately alleges that all Defendants

13

were involved in a scheme to defraud the automobile insurers and contemplated that the mail would be used in the alleged scheme. *See id.*; 18 U.S.C. § 1349. "[S]o long as they share a common purpose, conspirators are liable for the acts of their co-conspirators." *Salinas v. United States*, 522 U.S. 52, 64, (1997).

To the extent that Warsame argues that his lack of alleged involvement in the delivery of medical services or in the billing of insurers requires that the Indictment against him be dismissed for failure to state a claim "under the Federal Rules of Criminal Procedure," ECF No. 196 at 4, this argument is meritless. Warsame is accused of acting in concert with others to willfully and knowingly execute a scheme to defraud the automobile insurers. If he either did not willfully or knowingly participate in such a scheme, this defense should be raised at trial. However, arguing that he did not play a particular role in such a scheme, does not assert any failing of the Indictment against him.

To the extent that Hussein argues that the Indictment fails to allege that the payments he allegedly received were specifically for *medically unnecessary* services or were part of a *fraudulent scheme*, these are trial defenses. The Indictment adequately alleges that Hussein was paid and in turn paid patients directly to attend a certain number of treatment sessions at the clinic, and that number of sessions was predetermined for every patient regardless of the individual's actual medical needs. *See* ECF No. 1. The Government will have the burden to prove at trial that these sessions were medically unnecessary and resulted in noncompensable claims to automobile insurance companies that were billed for anyway. *See* 18 U.S.C. § 1349. If the Government fails to meet its burden at trial, Hussein will be acquitted. However, the Indictment adequately alleges the scheme in which he participated in as a conspiracy to commit health care and mail fraud.

E.     **Recommendation**

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Dana Comeaux's motion to suppress statements (ECF Nos. 149) be **DENIED**.

2. Preston Forthun's and Carlos Luna's motions to suppress search and seizure (ECF Nos. 152, 183) be **DENIED**.

3. Defendants' collective motions to dismiss the Indictment (ECF Nos. 146, 181, 195) be **DENIED**.

DATED: June 19, 2017                                s/Franklin L. Noel
                                                    FRANKLIN L. NOEL
                                                    United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 3, 2017**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **July 3, 2107,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.