UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 16-cr-339 (MJD/FLN) |
| Plaintiff, | |
| v. | **DEFENDANT FORTHUN'S MEMORANDUM IN SUPPORT OF** |
| Preston Forthun (1), | **MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29(C) OF THE FEDERAL RULES OF** |
| Defendant. | **CRIMINAL PROCEDURE** |

Dr. Forthun has moved for a judgment of acquittal and submits this memorandum in support of that motion. He respectfully submits a judgment of acquittal is proper because the insurance company witnesses testified the companies would pay bills for reasonable and necessary medical services regardless of whether a runner was used. At trial the evidence supported the use of runners but not unreasonable treatment or medically unnecessary treatment.

## Summary of Argument

Insurance company witnesses testified that the decision of whether they would pay for their insured's medical care ultimately depended on only whether the care billed for was (1) actually given, (2) to an insured, and (3) reasonable/medically necessary.

The government ignored that testimony and suggested that proof of runner payments alone was sufficient to convict Dr. Forthun of fraud regardless of whether he was performing proper care. The jury accepted that theory. But while there was proof that

payments were made,[1] the evidence showed that the treatments Dr. Forthun and Dr. Humenny were billing for were (1) medically proper and (2) actually given. Under these facts, the insurance companies cannot – as a matter of law – be victimized. This is because the companies were required to pay for (and would have paid for) medically necessary care. The nondisclosure of runner payments is thus not material.

## Argument

Dr. Forthun acknowledges the standard of review is strict for a Motion for Judgment of Acquittal under Fed. R. Crim. P. Rule 29(c). *United States v. Cole*, 2010 WL 5149348 at *1 (D. Minn. Nov. 24, 2010) (MJD), *aff'd* 721 F.3d 1016 (8th Cir. 2013) ("When considering a motion for judgment of acquittal, the Court must view the evidence in the light most favorable to the Government, draw all reasonable inferences that support the verdict, and resolve all conflicts in the Government's favor. [...] The Court 'should not weigh the evidence or assess the credibility of witnesses.' [...] The Court will reverse the verdict only if 'no reasonable jury could have found the accused guilty beyond a reasonable doubt.'") (citations omitted).

---

[1] Indeed, Dr. Forthun conceded as much in his opening statement. Tr. Vol. II at 83:22-84:4 ("And we absolutely, 100 percent agree that he paid people to bring in business, and there is nothing wrong with that, and it didn't cost the insurance company one more penny [...] the key to this is that the money that was paid was medically necessary, properly billed, lawfully earned.")

"Tr. Vol __" throughout the memorandum denotes references to the trial transcript.

1) **<u>Materiality is an element which must be proven beyond a reasonable doubt</u>**

It is an established rule that misrepresentations or omissions can only be the basis

of fraud convictions if they are material. *See, e.g., United States v. Jain*, 93 F.3d 436, 442

(8th Cir. 1996). This was accurately set forth in the jury instructions:

> A representation or promise is "material" if it has a natural tendency to
> influence, or is capable of influencing, the decision of a reasonable person
> in deciding whether to engage or not to engage in a particular
> transaction. However, whether a representation or promise is "material"
> does not depend on whether the person was actually deceived. You may
> only find a defendant guilty if a misrepresentation involved was
> "material." If you find misrepresentations were made but those
> misrepresentations were not material, you must find a defendant not guilty.

ECF 384 at 25.

2) **<u>Because insurers pay for all medically necessary care, runner payments alone
are not material. Payments are only material if coupled with medically
unnecessary care.</u>**

Representatives from insurance companies testified that when their insureds were

injured in a car crash, they would pay for their medical care so long as it was reasonable

and necessary. They did not say they would have denied care solely because a patient was

associated with a runner payment. They instead said it was an indicator that something

may be wrong and could lead them to do further investigation. *See, e.g.,*

> Q. So it sounds like there would be a whole lot of other information that
> you'd want to know and an investigation you wanted to do if you found out
> that a runner is being used?
> A. Yes, we would.

Tr. Vol. III 257:16-19 (Nielson Berg, Redirect)

The insurance company representatives consistently testified they would have paid for the care given, regardless of the use of runners, if the care given was reasonable and necessary. See the following examples:

> Q. Okay. Let's go back to the first premise. You are obligated, you being Liberty Mutual, are obligated to pay an insured who's paying premiums and who is injured in a legitimate accident and seeks treatment for those injuries, right?
> A. Reasonable and necessary treatment.
> Q. Reasonable and necessary treatment. Now, those additional treatments that you say increases the premium, as long as they're reasonable and necessary, you have to pay
> them, you being Liberty Mutual?
> A. If it's determined that it's reasonable and necessary, yes.
> Q. Yes. If it's determined that it's reasonable and necessary to have 50 treatments, are you obligated to pay for the 50 treatments?
> A. If it's determined that it's reasonable and necessary.
> Q. Right. You are obligated to pay?
> A. If it's determined that it's necessary and reasonable, yes.
> Q. I understand that. The question is if it's determined and it's necessary and reasonable, are you obligated to pay the insured for any injuries suffered in an automobile accident covered by that policy?
> A. If it's determined that it's reasonable and necessary, yes.
> Q. Okay. So as long as it's reasonable and necessary, you have to pay?
> A. Yes.

Tr. Vol. VIII 1362:19-1363:21 (Struebing);

> THE COURT: Well, here, let me ask the question. Would you deny the claim if you felt there was a runner involved, that's --
> THE WITNESS: Not necessarily --
> THE COURT: Whether or not it's medically necessity or not?
> THE WITNESS: No, not necessarily. We would not deny just based --
> THE COURT: So the key is not the runner?
> THE WITNESS: No, the key is the entire claim, the evaluation of the entire claim.
> THE COURT: All right.

Tr. Vol. III 255:8-19 (Nielson Berg);

> Q. Right, so we're talking about medically necessary treatment. We're not talking anything else. The insurance company, if it's medically necessary,

4

meaning it's not exaggerated, meaning it's not for an inappropriate purpose, meaning that they're actually injured and they need help, that's what I mean by medically necessary. Then you must pay the claim, right?

A. We would pay the claim when it's medically necessary, yes.

Tr. Vol. III 252:23-253:6 (Nielson Berg);

Q. The ultimate decision for you as to whether you paid a claim was that there was reasonable, necessary treatment, right?

A. Typically I think is how I would answer that.

Q. Okay.

A. Not absolute.

Q. But it's reasonable, necessary treatment, if there's reasonable, necessary treatment, that triggers your obligation to pay? Yours being Farmers, right?

A. If I'm tracking, yeah, I would agree with that.

Tr. Vol. V 604:22-605:6 (Cobb);

Q. Okay. And the obligation is to pay all medically necessary claims, right?

A. Correct.

Tr. Vol. V 650:25-651:2 (Prentice);

Q. Mr. Prentice, that hypothetical I just provided, I wanted to reiterate, I first stated that assuming a runner was involved in bringing a patient to a provider, right?

A. Mm-hmm.

Q. And the -- is that a yes?

A. Yes. Yes.

Q. Thank you. And you investigated the claim, the SI unit investigated the claim?

A. Okay.

Q. And all of the services were provided and medically necessary, yes?

A. That's the statement you made?

Q. I'm -- I'm asking -- assuming those things are correct, can you do that?

A. Okay. I can do that.

Q. Under those circumstances, you're contractually obligated to pay to cover those services if they're medically necessary?

A. Okay. So assuming -- I'm sorry, I want to make sure I have the question right. So assuming there was a runner involved and all of those things were found to be correct, we're contractually obligated by the contract of the policy, yes; by statute, not necessarily.

Tr. Vol. V 658:17-659:14 (Prentice);

> Q. Under the insurance policies, under the Progressive's policies, you are contractually obligated to pay for reasonable, necessary treatments that are related to auto accidents, correct?
> A. Correct.

Tr. Vol. V 682:5-9 (Hair);

> Q. But that's a liability claim, and it's not illegal for someone to seek treatment for purposes of a liability claim if they have a good case, right?
> A. They need to have a reasonable and necessary treatment.

Tr. Vol. VI 989:14-17 (Vanderwerff). Indeed, the government's first witness – Agent Ferris, the case agent – confirmed what the above witnesses would later say – this case was, at its core, about improper treatment or false bills.

> Q. Okay. So the core claim in this Indictment is it's a scheme to defraud automobile insurance companies by submitting claims and receiving reimbursements through his chiropractic clinic for services that were either not medically necessary or not rendered, right?
> A. That's correct.
> Q. That's the core claim in this Indictment?
> A. Yes.

Tr. Vol. III 201:15-22 (Ferris).

With this framing, the government should have introduced evidence of medically improper treatment (or treatment billed for that was not administered). It did not.

### 3) **Medically unnecessary care was not proven – so materiality was not proven.**

By closing argument the government seemed to abandon the position articulated by Agent Ferris and the insurance witnesses. That position was not supported by the facts adduced. In closing, the government repeatedly maintained it did not matter whether patients had the injuries they claimed. For example, discussing patient N.M. the

government articulated first it was up for the jury to decide it she was hurt, but second it did not matter if she was hurt:

> You have [N.M.]. Was she hurt? That's up to you to decide. She got paid on the front end. She told you she needed the money. She wanted the financing. She had 30 treatments. She got a settlement. Was she also hurt? Does it matter?

Tr. Vol. X 1756: 1-5. In discussing patient E.G. (who discussed how she felt wonderful after seeing Dr. Forthun, who explained the home exercises Dr. Forthun gave her, and who discussed how Dr. Forthun referred her to get necessary back surgery), the government's position was that just did not matter:

> Now, you saw it a couple of times, maybe with [E.G.] who's hurt who thought Preston Forthun did a good job. Hey, no one is saying he doesn't know how to be a chiropractor. That's not what this is about.

Tr. Vol. X 1741:12-16. The government acknowledged it had not had an expert assess whether the treatment given was proper.

> Now, this case is also not about fighting over whether certain patients had the injuries that they claimed to have. That's not the kind of case this is, and I'm sure you're glad that we didn't bring out experts to battle about whether [N.M.] or [A.H.] actually had an injured back or an injured leg or a sore neck back in 2013.

Tr. Vol. X 1727:22-1728:3. The government instead implied that some improper treatment must have been given as a result of runner payments, although they do not know when or where or how it would have happened. Tr. Vol. X 1736:10-17. (" Isn't it obvious why insurance companies would care that the healthcare provider is giving the insurance money to the patients to get them to come in and treat? It raises significant concerns about whether patients really need the care if they're being paid. It creates a

suspicion that providers are overtreating patients or billing for services that aren't even

provided because you've got patients who are coming in for money.")

This is legally insufficient. "The government may not suggest that information not

in evidence supports its case ... The defendant does not have to disprove his guilt by

introducing evidence contrary to the government's theory at the government's behest."

*United States v. Badger*, 983 F.2d 1443, 1455 (7th Cir. 1993), *cert. denied*, 508 U.S. 928

(1993).

Notwithstanding the implications by the government, the actual evidence

presented was that the doctors submitted bills with the belief that all care was medically

proper. This is corroborated by the testimony of the government's cooperating witness,

Dr. Darryl Humenny. He, when pressed, said he believed (at the time he was

administering his treatments) that all were medically proper:

> Q. And with respect to every single one of these claims, at the time you
> submitted it, you believed that Mr. Hussein was, in fact, injured, correct?
> A. Yes.
> Q. You also believed that the accident was not staged, right, that it was a
> real accident?
> A. Correct.
> Q. And that the treatments that are reflected on all these 30 claim forms
> were reasonably necessary based on your experience and training, right?
> A. It still doesn't take away from the fact that we paid for them to come in
> and treat at our clinic.
> Q. Well, that's -- you don't -- you didn't answer my question. They were
> still reasonable and necessary, weren't they?
> A. Yes.

Tr. Vol. VI 888:25-889:15;

Q. I ask you the same questions that I just asked you with respect to Mr. [H]. When you submitted these claims, you believed them to be true?
A. Yes.
Q. And you believed that the treatments were reasonably necessary?
A. Yes.
Q. To treat an actual injury?
A. Yes.

Tr. Vol. VI 892:7-15;

Q. And then below that is the treatment that you performed?
A. Correct.
Q. And you believed her injuries were real, correct?
A. Yes.
Q. You believed the accident was real, correct?
A. Yes.
Q. And you believed her pain was real, right?
A. Yes.
Q. And you conducted exams to verify the information she was providing you, right?
A. Yes.
Q. And you felt that these treatments were reasonable and necessary to treat her injuries, right?
A. Yes.

Tr. Vol. VI 902:10-23;

Q. At the time that you performed this treatment on June 20th, 2013, did you believe that her injuries were real?
A. Yes.
Q. Did you believe that she was in a car accident?
A. Yes.
Q. Did you believe that these treatments, as reflected in your treatment notes, were reasonable and necessary to treat her real injuries?
A. Yes.

Tr. Vol. VI 905:6-13;

Q. And you would tell the runner, however, that these people needed to be continued to be treated, correct?
A. Yes.
Q. Because it was medically necessary for them to continue their treatments, correct?
A. As well as for us to collect money from insurance.

9

Q. Let's divide it up. The first part of your answer is yes, you needed to have them come in because the treatments were medically necessary to recover from the injuries that they suffered from the accident they were in, fair?

A. Yes.

Q. And then you also had this level of treatment that you had been taught about in chiropractic school that had to be covered so that you could make your application to the insurance company to pay, fair?

A. Yes.

Tr. Vol. VI 931:17-932:7;

Q. Well, you can't have it both ways. I mean, either you were truthful when you said on May 12th that you did not knowingly treat anyone you believed to be injured.

A. I believed that to be truth.

Q. You were truthful then, right?

A. I believed that to be true, yes.

Q. And you've also told them that you never had any feeling that a patient was faking the injury, right?

A. Correct.

Q. That's what you said, right?

A. Yeah.

Q. And you also told them that would you would confirm the injury by examination and tests, right?

A. Yes.

Q. That's what you said?

A. Yes.

Q. And going back to when you were submitting these claims on the claim form, when you submitted that claim form to the insurance companies, you truly believed that those people were injured, right?

A. Yes.

Q. You truly believed that all the services that you provided were reasonable and necessary to treat their injury?

A. A lot of the information that the patient gives you is subjective so you're going off of what they're telling you, so if I don't have a reason to not believe it, then that's what I believed to be true, yes.

Tr. Vol. VI 856:12-857:14.

This raises the same concerns as those present in *United States v. Jain*, 93 F.3d

436, 442 (8th Cir. 1996) (reversing a fraud conviction where a psychologist "intended to

provide and did in fact provide his patients with the highest quality psychological services. While he also extracted undisclosed, unethical referral fees [...] there is no independent evidence proving that he thereby intended to defraud his patients.")

This Court held in its September 25, 2017 Order that *Jain* was "inapposite because, there, the alleged victims of the mail fraud were the patients and there was no evidence of harm; here, the Government alleges that the automobile insurance companies were the victims, that the victims were billed for services that were not medically necessary or were not provided, and that the non-disclosure of the runner payments was a 'material fact' to those insurance companies." Doc. No. 343 at 8. In light of the lack of evidence at trial for these matters, Dr. Forthun respectfully submits the analysis has changed and this case falls into the wheelhouse of *Jain*. *See also Jain*, 93 F.3d at 442 ("The essence of a scheme to defraud is an intent to harm the victim").

Dr. Forthun also renews his argument that Judge Schiltz's opinion in *Illinois Farmers Co. v. Mobile Diagnostic Imaging, Inc., et al.*, 2014 WL 4104789 (D. Minn. Aug. 19, 2014) is apposite. Notwithstanding the fact that *Illinois Farmers* is a civil case and this is a criminal case, *Illinois Farmers* is helpful because it acknowledges that "the payment of kickbacks ... and the medical necessity and reasonableness of the cost ... are entirely separate questions" *Id.* at *21. *Illinois Farmers* also reasons the result of the payments could have been that patients went to this provider rather than to another and got only medically proper treatment. *Id.* at *10. So it is here.

## Conclusion

The government's insurance company witnesses consistently testified their companies would pay for their insured's chiropractic bills unless those services were medically unnecessary or were bills for services not given. They also testified they would have wanted to know whether a runner was used. But they acknowledged the use of runners was not determinative of whether they would pay the bills. Medical necessity is determinative. Materiality then boils down to medical necessity. That is why Agent Ferris rightly called the alleged bills for unnecessary (or not performed) services "the core claim" in the indictment.

The government did not have an expert review patient files to determine whether treatments were medically necessary. The government argued it did not matter whether individual patients were hurt and got the treatment they needed because there must have been some improper treatment given to someone at some time. Absent this proof, a conviction should not be sustained. The Motion for Judgment of Acquittal should be granted.

Respectfully submitted,

GASKINS BENNETT BIRRELL SCHUPP, LLP

Dated: __11/15/2017__          __s/ Ian S. Birrell__
                              Andrew S. Birrell (#133760)
                              Ian S. Birrell (#0396379)
                              333 South Seventh Street, Suite 3000
                              Minneapolis, MN 55402
                              (612) 333-9500

                              ATTORNEYS FOR DEFENDANT FORTHUN